UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAN NAJERA T.,[1] | No. 1:26-cv-03773-TLN-CSK |
| Petitioner, | A# 240-770-954 |
| v. | **ORDER** |
| WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al., | |
| Respondents. | |

This matter is before the Court on Petitioner Willian Najera T.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition") (ECF No. 1), Motion for Temporary Restraining Order ("TRO") (ECF No. 3), and Motion for Extension of Time (ECF No. 15).  Respondents filed a response to the Petition (ECF Nos. 11, 12) and a Motion to Lift No Transfer Order (ECF No. 8). For the reasons set forth below, the Petition is GRANTED.  The Motion for TRO, Motion to Lift No Transfer Order, and Motion for Extension of Time are DENIED as moot.

[1]   The Court omits Petitioner's full name to protect sensitive personal information.  *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL BACKGROUND

This matter arises out of Petitioner's challenge to his civil immigration detention. Petitioner is a noncitizen who entered the United States without inspection on or around June 7, 2022. (ECF No. 12-1 at 2.) On June 7, 2022, Petitioner was encountered by Border Patrol agents in Hidalgo, Texas. (*Id.*) Immigration authorities issued Petitioner an I-860 Notice to Appear, instituting removal proceedings, and released Petitioner. (*Id.* at 2.)

Petitioner subsequently applied for asylum. (ECF No. 1 at 5.) Petitioner states he has lived in this country peacefully, complied with all laws, and worked to provide for his family for the last four years. (*Id.* at 5–6.) Petitioner has no criminal record. (ECF No. 12-1 at 3.)

Nevertheless, on April 1, 2026, a Florida police officer detained Petitioner during a traffic stop and transported him to a U.S. Immigration and Customs Enforcement ("ICE") office. (*Id.* at 2; ECF No. 1 at 5–6.) After being transferred into ICE custody, Petitioner asserts he spent "four nightmarish days enduring racist insults, beatings, mistreatment, and intimidation to force [him] to sign [his] deportation papers. (ECF No. 1 at 6.)

Petitioner has now been detained for approximately two months without a bond hearing. (*Id.* at 5.) On May 8, 2026, over one month into Petitioner's detention, an immigration judge denied Petitioner's application for pre-conclusion voluntary departure, pretermitted Petitioner's asylum application, and ordered Petitioner removed to Honduras, and in the alternative Nicaragua. (ECF No. 8-1 at 2–3.) Petitioner challenges the constitutionality of his civil detention. (ECF No. 1.)

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has

served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.    ANALYSIS

Petitioner claims his detention without a bond hearing violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 16–17.) The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas,* 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

#### i.  Liberty Interest

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025). Liberty interest may be strengthened over time. *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

3

Petitioner has a clear liberty interest here. Since his release from immigration custody four years ago, Petitioner has built a life in the United States with his family. Moreover, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original); *see also Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025) ("[A] noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody."). Even if he is removable, or his liberty is revocable, his liberty is still protected by due process. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693.

Respondents argue Petitioner is subject to mandatory detention authority under 8 U.S.C. § 1231(a)(2) because an immigration judge ordered Petitioner removed on May 8, 2026, and the order is final because Petitioner waived appeal. (ECF No. 11 at 2–3.) Section 1231(a)(2) mandates detention of noncitizens with final orders of removal during the removal period (the ninety days following the date the order becomes administratively final). 8 U.S.C. § 1231(a)(2). However, ICE detained Petitioner on April 1, 2026 — 37 days before an immigration judge issued an order of removal. Thus, § 1231 does not provide sufficient authority for Petitioner's re-detention.[2]

Moreover, a final order of removal for Petitioner does not alter this Court's finding, while the order may diminish Petitioner's liberty interest, it does not defeat it. Petitioner's constitutional claim does not evaporate with a shifting statutory basis for detention authority. *See*

---

[2] Rather, the vast majority of courts across this Circuit, including this one, have found 8 U.S.C. § 1226(a) applies to noncitizens like Petitioner who reside in the United States after the government releases them. *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). For these reasons, and consistent with this Court's numerous prior rulings, the Court finds Petitioner's initial detention was governed by § 1226(a) from April 1, 2026 to at least May 8, 2026. Therefore, Petitioner was entitled to the process required by § 1226(a) in that 37 days, including a custody or bond hearing, at minimum.

*Alvarenga Matute v. Wofford*, No. 1:25-CV-01206-KES-SKO, 2025 WL 2996577, at *4 (E.D. Cal. Oct. 24, 2025) (A "change in the applicable statutory authority [for detention] does not render moot petitioner's due process claim"); *Doe v. Becerra*, 697 F. Supp. 3d 937, 943 (N.D. Cal. 2023) ("[J]ust as the "shall" in [§] 1226 gives way to as-applied due process challenges, so too must the 'shall' in [§] 1231(a)" (citing *Demore v. Kim*, 538 U.S. 526 (2003)); *Nielsen v. Preap*, 586 U.S. 392 (2019)); *Hernandez Gomez v. Becerra*, No. 23-cv-01330-WHO, 2023 WL 2802230, at *3 (N.D. Cal. Apr. 4, 2023))).  "Petitioner's rights are not limited to those laid out by statute."  *Mohammed v. Warden of California City Det. Ctr.*, No. 1:26-CV-00118-DJC-CSK, 2026 WL 192368, at *2 (E.D. Cal. Jan. 26, 2026) (citing *Nielsen v. Preap*, 586 U.S. 392, 420 (2019)); *see also Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 371 (1987)) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause.").  With a clear liberty interest, the Court next turns to the procedural safeguards that were owed to Petitioner.

ii.  *Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him.  The four years that Petitioner spent at liberty underscores the gravity of its loss.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.").  Despite his interest in maintaining his liberty, Petitioner has now been detained for over two months without any opportunity to be heard as to the justification of his detention.  Accordingly, this factor weighs in

5

favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any process as to his detention, either pre- or post-detention.  Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process.  *Zadvydas*, 533 U.S. at 690.  Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."  *Hernandez*, 872 F.3d at 994.  Here, at the time of his arrest, and at least the first month of his detention, Petitioner was not subject to a final order of removal.  Additionally, Respondents own records show Petitioner has no criminal history (ECF No. 12-1 at 3), nor do Respondents contend that Petitioner is a danger to the public or a flight risk.  Without any showing by Respondents of a legitimate interest to detain Petitioner prior to any order of removal, the Court finds there is a serious likelihood Petitioner was erroneously deprived of his liberty interest.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Notice and custody determination hearings are routine processes for Respondents and are indeed the very processes required under 8 U.S.C. § 1226(a).  Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal.  Any burden associated with the provision of these processes does not outweigh Petitioner's liberty interest and the risk of erroneous deprivation.

The Court finds that, under these circumstances, Respondents were required to provide notice and a pre-deprivation hearing.  The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court

describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129.  Respondents have not provided any substantive opposition to the contrary, nor do they argue that Petitioner should be a "special case."  (*See generally* ECF Nos. 8, 11.)  Yet, Petitioner was not provided notice or a pre-deprivation hearing. Nor was he provided a post-deprivation hearing as to his custody.  Thus, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

**IV.    CONCLUSION**

Respondents detained Petitioner in violation of the Fifth Amendment.  Accordingly, IT IS HEREBY ORDERED:

1.  The Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

2.  Petitioner's Motion for TRO (ECF No. 3), Petitioner's Motion for Extension of Time (ECF No. 15), and Respondents' Motion to Lift No Transfer Order (ECF No. 8) are DENIED as moot.

3.  Respondents must IMMEDIATELY RELEASE Petitioner **Willian Najera T.** (A# **240-770-954**) from custody under the same conditions he was released prior to his current detention.  Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.  At the time of release, Respondents must **provide a copy of this Order to Petitioner** and return all of Petitioner's documents and possessions.

4.  **Respondents must file a notice of compliance with this Order by June 11, 2026.**

5.  Respondents are ENJOINED from re-detaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention.  *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872

F.3d at 990.  At any such hearing, Petitioner shall be allowed to have counsel present.

6. **The Clerk is directed to serve the Golden State Annex with a copy of this Order.**

7. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: June 9, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

8